716 So.2d 120 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Grover Pierre PERKINS, Jr., Defendant-Appellant.
No. CR97-1119.
Court of Appeal of Louisiana, Third Circuit.
June 17, 1998.
*122 Michael Harson, Lafayette, for State.
Carl A. Perkins, Covington, for Grover Perkins.
Grover Perkins, pro se.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
THIBODEAUX, Judge.
The defendant, Grover Pierre Perkins, Jr., appeals his conviction and sentence of five (5) years at hard labor for possession of marijuana with intent to distribute, a violation of La.R.S. 40:966(A)(1). Mr. Perkins and two other codefendants, Johnathan "Scooby" Taylor and Troy L. Jordan, were charged with possessing marijuana with the intent to distribute. The jury convicted Mr. Perkins on September 12, 1996, after a one-day trial. The trial judge ordered a presentence investigation report, and a sentencing hearing was held on May 12, 1997. At the conclusion of the hearing, the trial judge pronounced sentence.
We reverse the defendant's conviction of possession of marijuana with the intent to distribute. The evidence is insufficient to prove beyond a reasonable doubt his intent to distribute. However, we render a judgment of conviction to the lesser and included charge of simple possession of marijuana.

ASSIGNMENTS OF ERROR
The defendant has organized fourteen (14) assignments of error into seven (7) arguments in his appellate brief. Because we are reversing his conviction of possession of marijuana with the intent to distribute, we shall not address assignments 9 and 12, which deal with excessiveness of the sentence, nor will we consider assignment 10, which deals with *123 the trial court's alleged consideration of the defendant's refusal to acknowledge his guilt as a factor in imposing sentence. We will address the claims of ineffective assistance of counsel, error in admitting hearsay testimony, error in allowing expert testimony from a police officer, and insufficiency of the evidence to sustain a conviction of possession of marijuana with intent to distribute.

FACTS
The incident leading to the defendant's arrest occurred at approximately 8:30 p.m. on July 30, 1994. The Kaplan Police Department was assisting the Alcohol Beverage Control officers in investigating the possible sale of liquor without proper licensing at the Speak Easy Lounge in Kaplan. Among the police officers participating in the raid were Chief Thomas Guidry, Sr., Sergeant Chris Abshire, Officer Kenneth Accord and Detective Rodney Pero.
The officers testified that when they arrived between 8:00 p.m. and 8:30 p.m., they noticed one car parked in front of the Speak Easy Lounge. The car was a 1980 Cadillac Deville occupied by three men. No one approached the Cadillac, and it appears that no one suspected any illegal activity. Detective Pero testified he exited his unmarked police car and went to open the front door of the lounge after he heard gravel crunching and moving, and he turned to see the driver and front seat passenger of the Cadillac fleeing the area. Detective Pero did not recognize either man. The two men ran in opposite directions away from the lounge. The driver ran within three feet of Chief Guidry, who was covering a side door of the lounge, but the Chief did not know who the man was.
Officer Accord was riding in the same car as Detective Pero, and even though he was twenty to twenty-five feet away from the driver, he testified he recognized the driver. Officer Accord could not recall the driver's name immediately, but later he remembered the man's name was Mr. Perkins. Officer Accord had previously worked at a 24-hour restaurant in Abbeville, and he remembered the defendant was a regular customer of the restaurant. Also, Officer Accord would see the defendant whenever he was out and about on the streets of Abbeville.
The driver and the front seat passenger escaped apprehension by the police that night. The two men fled the Cadillac, leaving both front doors open. When the police walked over to the Cadillac, they saw on the front seat of the car, in plain view, an automatic handgun, "blunts" (i.e., marijuana cigars), and a bag containing marijuana cigarettes and green vegetable material suspected to be marijuana.
The third occupant in the backseat of the Cadillac did not try to flee, and he was arrested. The police officers recognized Johnathan "Scooby" Taylor based upon his previous encounters with them. Detective Pero said Mr. Taylor was "under the influence" at the time of his arrest. In fact, Mr. Taylor attempted to hang himself in jail the next day. For the next week, Mr. Taylor was admitted to a hospital and a psychiatric unit since he continued to try to harm himself.
On the night of July 30, 1994, Mr. Taylor informed the officers that the driver of the Cadillac was Pierre Perkins. In the glove compartment of the Cadillac, the police found the title to the Cadillac; it had been purchased on July 30, 1994, by the defendant.
Mr. Taylor was questioned by Detective Pero on August 3, 1994, after undergoing several days of psychiatric treatment. In the second interrogation, Mr. Taylor said that on the night of July 30, 1994, he had come to Kaplan with "Troy," codefendant Troy Jordan, and another man named "Shorty Mack." Detective Pero had already spoken on the telephone with the defendant who had mentioned a man named "Shorty Mack." When asked why he had changed his story, Mr. Taylor said that on the night of July 30, 1994, he was "high" and could not remember.
Perkins presented an alibi defense, and he attacked the problem with his identification as the driver who fled the parked Cadillac. At trial, Chief Guidry made an in-court identification of Mr. Perkins as the man who ran past him on the night of July 30, 1994. However, on cross-examination, it was revealed that the reason he was able to make this incourt identification was that Chief Guidry *124 looked at the mug shot of Mr. Perkins after his arrest, but he did not select him out of a photo lineup.
Mr. Perkins's witnesses included his sister, Latonia Perkins, who testified that on July 30, 1994, Mr. Perkins had gone from their home in Baton Rouge to Lafayette to purchase a used car. He drove with a man named Eugene, who went by his nicknames, "Two Dollars" or "Shorty Mack." Mr. Perkins returned to Baton Rouge around 6:00 p.m., since he had agreed to baby-sit that night for Ms. Perkins's children. He was not driving the newly-purchased car when he returned to Baton Rouge. Around 10:00 p.m., when Ms. Perkins returned home, the defendant left to look for Eugene and his car.
Myron Haines testified that on July 30, 1994, he dropped off Eugene Russell at Mr. Perkins's home in Baton Rouge. Katherine Pen, Mr. Perkins's girlfriend, testified that throughout the evening of July 30, 1994, she spoke on the telephone with him while he was baby-sitting his sister's children.
Mr. Perkins explained that he drove from Baton Rouge to Lafayette with Eugene Russell in order to purchase a used car and have someone to drive the second vehicle back to Baton Rouge. On the way, the two men stopped in Abbeville to pick up Troy Jordan, who had located the used car for Mr. Perkins and knew the directions to the owner. After purchasing the Cadillac Deville, Mr. Perkins ran a few errands in Lafayette, and then headed back to Baton Rouge. He drove to and from Lafayette in a Mazda truck, and he instructed Eugene Russell to drive the Cadillac, drop off Troy Jordan in Abbeville, and then return to Baton Rouge. Mr. Perkins never saw the Cadillac again until two weeks later when he saw it in the parking lot of the Kaplan Police Department.
Mr. Perkins said he lived at his father's home in Baton Rouge, and he had not worked in Abbeville in a couple of years. However on cross-examination, the state brought out the fact that the title to the Cadillac listed an address of "918 Shirview, Abbeville," and not a Baton Rouge address. Mr. Perkins explained that he borrowed $200.00 from Troy Jordan and agreed to send the title to the Cadillac to Troy's house at the address in Abbeville.
One key witness who did not testify at the trial was Johnathan "Scooby" Taylor. Obviously the state did not call Mr. Taylor as a witness since he had recanted his first statement that Pierre Perkins was the driver of the Cadillac. However, as will be discussed later, the trial court allowed the state to introduce hearsay testimony about Mr. Taylor's initial identification of Pierre Perkins as the driver.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 5, 6 & 13
These assignments of error raise the issue of ineffective assistance of counsel. The first claim, in Assignment of Error No. 1, is that counsel for the defendant failed to review the Presentence Investigation Report and rebut adverse information contained therein. This claim is factually inaccurate. The defendant has been represented by five different attorneys. After his conviction, William Dauphine enrolled as counsel for the defendant and requested a continuance of the sentencing hearing in order that he may prepare to inquire about the contents of the PSI report.
At the May 12, 1997, contradictory sentencing hearing, counsel for the defendant questioned Kelly Langley, the probation and parole officer who prepared the PSI report. Specifically, Officer Langley was questioned about her reference in the PSI report to "special circumstances" and the firearm. From the questions and arguments presented by counsel at the sentencing hearing, it is apparent that he had read the report and was attempting to refute the allegations and suggestions made by Ms. Langley concerning the defendant's legally-registered firearm.
Therefore, the first assignment of error is without merit since it is an incorrect statement of the facts.
The five remaining assignments of error address other specific acts or omissions that deprived the defendant of a fair trial. A claim for ineffective assistance of counsel is properly raised in an application for postconviction relief. State v. Burkhalter, 428 So.2d 449 (La.1983). This enables the district *125 judge to order a full evidentiary hearing on the matter. State v. Seiss, 428 So.2d 444 (La.1983). The record contains evidence sufficient to decide the issue and we shall do so.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must show that counsel's performance was deficient and that this deficiency prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Fickes, 497 So.2d 392 (La.App. 3 Cir.1986), writ denied, 515 So.2d 1105 (La.1987).
In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. United States v. Cronic, 466 U.S. 648,104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 stated:
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
(Citation omitted).
Mr. Perkins claims his trial counsel was ineffective for making a reference in the opening statement to material contained in the police report and "therefore allowing the admissibility of this report." During opening statement, trial counsel said, "Ultimately, the other two guys who were arrested said he wasn't there. They admitted he wasn't there." There is no specific reference in the opening statement to the police report. What arose later was that the trial judge allowed hearsay testimony from the initial police report and, thus, opened a Pandora's box of problems. Once the trial judge allowed Detective Pero to say who Mr. Taylor said was driving the Cadillac, counsel for the defendant later agreed to the introduction of the entire police report. Additional hearsay testimony was then introduced to rebut the initial hearsay testimony admitted. Eventually, the trial judge realized the problems and tried to justify his initial admission of hearsay by saying counsel for the defendant "opened the door" during her opening statement by referring to the police report.
This particular assignment of error is rejected because the police report eventually was introduced into evidence without objection by trial counsel. Whether or not the admission of this report constituted ineffective assistance of counsel will be addressed in the next assignment of error, which addresses more specifically the issue of hearsay.
The defendant next argues that the trial counsel erred when she did not object to the introduction into evidence of the initial police report of the July 30, 1994 incident. In the first police report, the police noted that the one witness present in the Cadillac *126 who identified Mr. Perkins as one of the two men who ran away was Johnathan "Scooby" Taylor, a codefendant. Mr. Taylor did not testify at trial; therefore, the testimony of Detective Pero repeating what Mr. Taylor had said to him at the initial interrogation was inadmissible hearsay. However, it appears that trial counsel was making a tactical decision to agree to the introduction of this report.
There were two police reports. In the July 31st initial offense report, Mr. Taylor said that Mr. Perkins was driving the car. However, in an August 3rd interrogation, Mr. Taylor recanted this assertion, and the supplemental police report noted that Mr. Taylor said he identified the wrong man because he was high at the time of his arrest and initial interrogation. As will be discussed later, the trial court initially erred when it admitted inadmissible hearsay testimony of what Mr. Taylor told Detective Pero. Once this inadmissible hearsay testimony was admitted to the jury, it appears that trial counsel for the defendant had no other choice than to seek admission of all the police reports which contained incriminating and exculpating information.
Any possible error resulting from the admission of this report was the result of the trial judge's initial erroneous ruling allowing inadmissible hearsay testimony. Much deference is given to tactical decisions of trial counsel. Even without Mr. Taylor's identification of Mr. Perkins, Officer Accord recognized the driver as Mr. Perkins, the defendant. Thus, whatever error occurred did not so undermine the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result.
The third claim of the defendant is that trial counsel failed to file a motion to suppress the identification of him. Trial counsel for the defendant was the third attorney retained by him to represent him before his trial. The second attorney retained by the defendant had noted in a motion that the state was granting "open file" discovery; that is, the state was allowing counsel for the defendant to examine the District Attorney's file of this case in lieu of formal discovery. Without the filing of formal discovery motions, which may have inquired if there were any lineups or photo identifications of the defendant, the trial counsel probably was unaware that there was any suggestive identification of the defendant.
If a pretrial, out-of-court photo identification is suggestive, it may taint the incourt identification of the defendant as the perpetrator and may be subject to a motion to suppress. State v. Martin, 595 So.2d 592 (La.1992). The identification procedure used in the Martin case is similar to the identification procedure employed by Chief Guidry in this case and may very well be suggestive. However, without a pretrial contradictory hearing, such a conclusion is somewhat speculative. Thus, this issue cannot be addressed and resolved based upon the record presented on appeal.
The final claim of ineffective assistance of counsel by the defendant is that trial counsel failed to file a motion to suppress the evidence seized in the inventory search of the Cadillac. In the present case, after the driver and passenger fled the Cadillac, they left the doors open, and the police officers could see, in plain view, an automatic handgun, marijuana cigars, or "blunts," and a bag of green vegetable material which appeared to be marijuana. The marijuana was obvious contraband and, therefore, could be seized. Since the driver and passenger had fled the car and no one else was present to claim the car, the police were justified in impounding the Cadillac and making an inventory of the contents of the vehicle.
One of the exceptions to the warrant requirement is the plain view exception. When the police looked through the open doors of the Cadillac, they recognized in plain view marijuana cigars, an automatic handgun, and other possible contraband on the front seat of the car. Under the "plain view" doctrine, if the police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The police may also *127 conduct an inventory search of a vehicle that has been abandoned and is being impounded. See e.g., State v. Smith, 95-1826 (La.App. 1 Cir. 9/27/96); 681 So.2d 980, writ denied, 96-2568 (La.3/27/97); 692 So.2d 390. Therefore, even if trial counsel may have erred in failing to file a motion to suppress the search of the vehicle, the defendant suffered no prejudice from this omission since the seizure of the evidence was clearly justifiable.

ASSIGNMENTS OF ERROR NOS. 4, 7, & 8
The defendant claims that the trial court erred in admitting hearsay testimony. At trial, the assistant district attorney asked Detective Pero if he had questioned Johnathan "Scooby" Taylor, the occupant who remained inside the Cadillac Deville. Detective Pero said that he had. Detective Pero also said that he had prepared a report of the investigation. When the state asked Detective Pero who did Johnathan Taylor say was the driver of the vehicle, counsel for the defendant objected on the grounds of hearsay. Without giving any reasons, the trial court overruled the objection and admitted Mr. Taylor's hearsay testimony.
There is no hearsay exception under the Code of Evidence for information contained in police investigative reports. Hearsay is an out-of-court, unsworn, oral or written statement by a third person, which is offered for the truth of its content. La.Code Evid. art. 801. "Hearsay statements are inadmissible unless they fit into one of the recognized exceptions." State v. Gremillion, 542 So.2d 1074, 1077 (La.1989). The contents of a police report are based on hearsay and are not admissible as a business record. Id. Nor are the contents of a police report admissible under an "explanation exception." Generally, an explanation of a police officer's actions should never be an acceptable basis upon which to admit an out-ofcourt declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused. State v. Hawkins, 90-1235 (La.App. 4 Cir. 9/15/95); 667 So.2d 1070, affirmed, 96-0766 (La.1/14/97); 688 So.2d 473.
Obviously, the trial court erred when it permitted the admission of the hearsay evidence. Later, the trial judge tried to justify what he did by noting that counsel for the defendant had opened the door for the admission of this information and that he had overruled the hearsay objection because the state needed to rebut information which the trial judge felt the defendant had brought out.
The trial court erred. There is no exception to the hearsay rule that would apply to the present case. The state could have called Mr. Taylor to the stand. If Mr. Taylor had testified that the defendant was the driver of the vehicle, then there was no harm suffered by the state. On the other hand, if Mr. Taylor had stated that the defendant was not the driver of the vehicle, then the state could have impeached him by his prior inconsistent statement. The state also had the on-the-scene identification of Officer Accord. The defendant did not open the door during opening statements because he never made any reference to a police report.
However, the erroneous admission of inadmissible hearsay is subject to the harmless error analysis. In State v. Wille, 559 So.2d 1321 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), the supreme court ruled that when evidence such as this has been impermissibly admitted into evidence, then a harmless error test is applied to determine whether the improperly-admitted evidence contributed to the verdict. The supreme court explained this test as follows:
[T]he erroneous admission of the hearsay and irrelevant evidence does not require a reversal of defendant's conviction.... Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict.
Id. at 1332.
Confrontation errors are also subject to a harmless error analysis.
The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination was fully realized, is nonetheless convinced that the error was harmless beyond a reasonable *128 doubt. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."
Hawkins, 688 So.2d at 478; Wille, 559 So.2d at 1332 (citation omitted).
Although the introduction of the hearsay statement was in error, it was cumulative with other evidence presented. Officer Accord recognized Mr. Perkins, the defendant, as the driver who fled. The title to the Cadillac revealed Mr. Perkins as the new owner of the vehicle. Thus, even though the inadmissible statement that Mr. Perkins was the driver of the Cadillac implicated him as one of the offenders, other admissible evidence provided the proof necessary to establish his presence at the crime scene. The inadmissible statement did not beyond a reasonable doubt contribute to the guilty verdict. See State v. Veal, 583 So.2d 901 (La. App. 1 Cir.1991).

ASSIGNMENT OF ERROR NO. 11
The defendant claims the trial judge erred in allowing Detective Pero to testify as an expert witness on the distribution and manufacture of marijuana. Two observations easily dispose of this argument. First, the defendant did not object to Detective Pero's testimony. Second, Detective Pero was never qualified as an expert in narcotics investigation or in the distribution or manufacture of marijuana.

ASSIGNMENT OF ERROR NO. 14
Mr. Perkins claims that the evidence was insufficient to support his conviction for possession of marijuana with the intent to distribute. He attacks his conviction on two grounds: First, he claims there is insufficient evidence that he was in possession of the marijuana and second, that there was insufficient evidence to prove he had the intent to distribute the marijuana.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino, 436 So.2d 559. Since it is the role of the fact finder to weigh the respective credibility of the witness, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
Turning to the issue of possession of marijuana, the state is not required to show actual possession of the narcotics by a defendant in order to convict. State v. Trahan, 425 So.2d 1222 (La.1983). Constructive possession is sufficient. A defendant is considered to be in constructive possession of a narcotic when he exercises dominion and control over the illegal substance. State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). Both the Smith and Trahan opinions noted that a defendant may also be deemed to be in joint possession of a narcotic which is in the physical custody of a companion if the defendant willingly and knowingly shares with the other the right to control it. In order to have dominion and control over a narcotic, one must have a direct right and ability to exercise control. State v. Newberry, 560 So.2d 121 (La.App. 3 Cir.1990), citing State v. Segura, 546 So.2d 1347 (La.App. 3 Cir.1989).
In addition to possession, the state must also prove guilty knowledge. A defendant's guilty knowledge that he possesses an illegal narcotic drug may be established by direct or circumstantial evidence such as the defendant's use of the drug, participation and distribution of the drugs, or possession of drug paraphernalia. In the present case, the defendant's guilty knowledge may be established by the circumstances *129 of the defendant's flight from the police officers.
Louisiana jurisprudence is clear that in order to convict a person on the basis of constructive possession, something more than mere presence in the area where the drugs are found or mere association with the person in actual custody of drugs must be shown. State v. Williams, 546 So.2d 963 (La.App. 3 Cir.1989), citing State v. Alford, 323 So.2d 788 (La.1975). Several cases have listed certain factors which may be considered in determining whether a defendant is in constructive possession of narcotics. These factors include the defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person who has physical possession of the drugs; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and evidence that the residence was frequented by drug users. See State v. King, 554 So.2d 254 (La.App. 3 Cir.1989).
The evidence in this case established that Mr. Perkins was sitting in the front seat of his recently-purchased Cadillac and that one or both of the occupants of the front seat of the car were in the process of making "blunts;" that is, they were cutting the tips off cigars, emptying the tobacco which was contained therein, and replacing it with marijuana in such a manner that a police officer passing by would not recognize that the cigars actually contained marijuana. The police found the title to the vehicle in Mr. Perkins's name, and one of the officers eventually identified him as the driver. Therefore, viewing the evidence presented in the light most favorable to the prosecution, the state established that the defendant was in at least constructive possession of the marijuana.
The question of whether the state proved that the defendant, Mr. Perkins, had the requisite intent to distribute the marijuana is more troublesome. It is very unusual to have direct evidence of intent. Because evidence of intent is generally circumstantial, the Louisiana Supreme Court has enunciated criteria for determining an intent to distribute. We should consider whether: (1) the defendant ever distributed or attempted to distribute any marijuana; (2) the marijuana was in a form usually associated with marijuana possessed for distribution to others; (3) the amount was such as to create a presumption of intent to distribute; (4) expert or other testimony established that such an amount as found on the defendant is inconsistent with personal use only; and, (5) any paraphernalia, such as baggies or scales, were present, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Jones, 544 So.2d 636 (La.App. 3 Cir.1989).
In this case, the evidence is woefully insufficient to prove that the defendant intended to distribute marijuana. Only one of the enumerated factors was presentthe existence of five (5) zip-lock bags containing green vegetable material which was determined to be marijuana. However, there was no testimony that such packaging was inconsistent with personal use only, particularly considering the presence of three individuals in the car who could have shared the marijuana among themselves. Furthermore, Detective Pero testified that only the number of handrolled cigarettes (15) and the number of blunts (one completed and one in the process of being made) suggested an intent to distribute, along with his observation that the Speak Easy Lounge was having a dance that night.[1] But, again, he never indicated that this number was inconsistent with personal use. The trial judge stated that there was "evidence by a police officer, with experience in narcotics, that it was in excess of the amount they use for personal consumption." This is incorrect. The police officer, Detective Pero, referred only to the number of marijuana cigarettes and was not asked, nor did he give an opinion on, whether the number of cigarettes was inconsistent with personal use.
There was no evidence that the defendant distributed or attempted to distribute the *130 marijuana he possessed the night of his arrest or that he had ever distributed or attempted to distribute any controlled dangerous substances in the past.
Indeed, Detective Pero did not know the amount of marijuana seized. The record reflects this line of questioning by defense counsel:
Q. Do you know how many ounces of marijuana that is?
A. No, ma'am.
Q. Can you take a guess?
A. Maybe an ounce.
Q. An ounce. Okay. If I told you it was 7 grams, would that jive with your experience and what you're looking at?
A. I'm not too familiar with grams and ounces, as per compatibility, as to comparing it.
The intent to distribute may be established based solely on the amount found only if the quantity is so large that no other inference is possible. State v. Hearold, 603 So.2d 731 (La.1992). This record has been carefully scrutinized. The amount of marijuana in the five zip-lock bags was never established at trial, nor was the equivalent of the number of cigarettes which could be made from the amount contained in the bag. Furthermore, the amount of marijuana contained in the two blunt cigars and fifteen cigarettes was not shown. We surmise that the amount was seven grams of gross weight.[2] In her crossexamination of Detective Pero, counsel for the defendant repeatedly referred to the amount as seven grams. The state did not dispute this reference.
In State v. Jones, 544 So.2d 636, seven baggies of marijuana were seized. The weight was not proved at trial. In State v. Green, 508 So.2d 602 (La.App. 2 Cir.1987), ten baggies weighing 1.62 ounces (45.93 grams), were seized. In both cases, the convictions for possession of marijuana with intent to distribute were reversed. The amount of marijuana in State v. Green is approximately 6½ times the amount of marijuana seized in this case.
Other evidence buttresses our conclusion that the evidence in this case is insufficient to convict the defendant of the intent to distribute the marijuana. The police officers did not observe any other drug activity in the area, the area was not shown to be one frequented by drug users, and no cash was found in the defendant's car. Furthermore, the automobile was the only vehicle in the parking lot of the Speak Easy Lounge.
A reviewing court may not disregard its duty to consider the constitutional sufficiency of the evidence simply because the record contains some evidence that tends to support each fact necessary to support the crime. It cannot consider only the evidence most favorable to the prosecution. Rather, it must consider the record as a whole, just as a rational fact finder would. If there could be disagreement between rational fact finders on the interpretation of the evidence, its view of all the evidence most favorable to the prosecution must be adopted. State v. Mussall, 523 So.2d 1305 (La.1988).
When we view the entire record in this case, we reach the inescapable conclusion that a rational trier of fact could not have concluded that the defendant intended to distribute marijuana. Rather, the evidence supports a conviction for possession of marijuana, a lesser and included responsive verdict. We will, therefore, render a judgment of conviction for simple possession of marijuana. See La.Code Crim.P. art. 821(E).

CONCLUSION
For the foregoing reasons, the defendant's conviction of possession of marijuana with intent to distribute and his sentence of five years at hard labor are vacated and set aside. This case is remanded to the trial court with instructions to enter a judgment of guilty to possession of marijuana, and to sentence the defendant accordingly.
CONVICTION AND SENTENCE VACATED AND SET ASIDE. CASE REMANDED TO ENTER JUDGMENT OF GUILTY TO POSSESSION OF MARIJUANA *131 AND TO SENTENCE ACCORDINGLY.
NOTES
[1] His testimony was the only evidence in the record suggesting a dance, although Detective Pero and Sergeant Abshire testified that the door to the establishment was locked.
[2] David Epstein, the chemist who tested the substance for the state, testified "gross weight" included the weight of the plastic containers. He never indicated the weight of the contraband.