757 So.2d 63 (2000)
STATE of Louisiana
v.
Patrick TAYLOR.
No. 99-KA-1154.
Court of Appeal of Louisiana, Fifth Circuit.
February 29, 2000.
*64 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Ron A. Austin, Assistant District Attorneys, Gretna, Louisiana, Counsel for appellee State of Louisiana.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, Counsel for appellant Patrick Taylor.
Court composed of EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and CLARENCE E. McMANUS, Judges.
McMANUS, Judge.
Defendant, Patrick Taylor, appeals from his convictions of one count of possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, and one count of possession with intent to distribute marijuana, a violation of LSA-R.S. 40:966. We affirm the conviction for possession of a firearm by a convicted felon, but because *65 we find that the evidence was not sufficient to convict defendant of possession with intent to distribute marijuana, we vacate this conviction and sentence, enter a verdict of guilty of simple possession of marijuana, and remand the matter for sentencing on this charge.
On May 13, 1999, the Jefferson Parish District Attorney filed a two-count bill of information against defendant, Patrick Taylor. Count 1 charged possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. Count 2 charged possession with intent to distribute marijuana, a violation of LSA-R.S.40:966A. Defendant was arraigned on June 2, 1999, and entered not guilty pleas on both counts.
Defendant filed various pre-trial motions, including motions to suppress the evidencethe narcotics and gunand the confession. The trial court heard and denied those motions on August 13th, 1999. Defendant was tried by a jury of twelve on August 17th, 1999. On that day the jury returned a verdict of guilty as charged as to both counts.
On August 26th, 1999, the state filed a habitual offender bill of information, alleging defendant to be a second felony offender. On September 10th, 1999, the court sentenced defendant to eleven years' imprisonment at hard labor as to Count 1, without benefit of parole, probation, or suspension of sentence. The court sentenced defendant to five years at hard labor on Count 2. The court ordered that the sentences be served concurrently. On that day the State withdrew the habitual offender bill. The judge advised defendant he would have two years from the date his judgment of conviction and sentence become final within which to file an application for post-conviction relief.[1] Defendant made an oral motion for appeal that day. He filed a pro se motion for appeal in writing on August 31, 1999. His attorney filed a written motion for appeal on September 14th, 1999. The appeal was granted on September 15th, 1999.
On appeal, defendant alleges three assignments of error:
1. that the trial court erred by failing to grant the defendant's Motion to Suppress after the State failed to show that a complete Miranda warning was given;
2. that he received ineffective assistance of counsel when his attorney failed to object to the manner in which the search of his residence was conducted; and,
3. the evidence was insufficient to support the verdict of guilt to the charge of possession with the intent to distribute marijuana.
The facts surrounding the search of defendant's home and his arrest are as follows. Detective Claude Koenig, a narcotics investigator with the Gretna Police Department, testified that a confidential informant notified him that Patrick Taylor was selling marijuana at his residence. Based on that information, Koenig applied for a search warrant for defendant's home, located at 731 Governor Hall. A warrant was issued on April 2nd, 1999. At 7:11 that evening, the warrant was executed.
Koenig, along with Sergeant Louis Adams, Detective James Price, Detective Russell Lloyd, and some uniformed officers participated in the search. When they approached defendant's house, an unknown black male ran from the porch. Det. Lloyd pursued the man, but was unable to apprehend him. Lloyd located defendant at the corner of Seventh Street and Governor Hall, as he was walking home from a grocery store. Lloyd escorted defendant to his house and turned him over to Koenig.
By that time, the officers had secured the residence, and had found no one was *66 there. After advising defendant of his Miranda[2] rights, Koenig asked him whether he had any drugs or weapons in the house. Defendant pointed out a pistol located on top of a television set. He also advised the officers that there was marijuana under the bed. Adams retrieved the weapon, a loaded .25 caliber semi-automatic handgun. Lloyd searched under the bed and found a shoebox top containing green vegetable matter and a box containing five smaller boxes of cigars. The cigars had been split open, and the tobacco removed.[3] A box of plastic sandwich bags was located on top of the bed. Det. Lloyd searched defendant's person, and found $269.00 in currency.[4]
The state produced the report of Edgar Dunn, who performed the analysis on the green vegetable matter. The parties stipulated that were Dunn to testify, he would be qualified as an expert in chemical or drug analysis, and that he would testify according to his report. The report states that the loose vegetable matter tested positive for marijuana, as did the vegetable matter found in five cigars. The first specimen weighed 74.36 grams, and the marijuana found in the cigars weighed 9.52 grams.
The parties stipulated at trial that defendant had been convicted of simple burglary, the predicate felony alleged in support of Count 1. The parties further stipulated that his release from custody pursuant to that conviction was within the ten-year cleansing period provided under LSA-R.S. 14:95.1. The state produced a certified copy of the simple burglary conviction, and it was admitted without objection. Probation officer Gilbert Battiste testified that he supervised defendant's probation on the simple burglary conviction, and that one of the conditions of the probation was that defendant not possess a weapon. Battiste identified a Verification of First Offender Pardon, which showed that defendant had completed his term of probation on December 23rd, 1998.
As defendant's first assignment of error, he argues that the trial court erred by failing to grant the defendant's Motion to Suppress after the State failed to show that a complete Miranda warning was given. By this assignment, defendant argues the statement he made to police at the time the search warrant was executed should have been suppressed as it was obtained before he was properly advised of his Miranda rights. Defendant further asserts that evidence seized as a result of the statement should have been suppressed.
Before a confession or inculpatory statement can be introduced into evidence at trial, the State must affirmatively prove that it was made freely and voluntarily, and was not made as a result of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. Moreover, the state must prove that the defendant was first advised of his constitutional rights as per Miranda. State v. Normand, 98-1312, p. 5 (La.App. 5th Cir. 5/19/99), 735 So.2d 901, 904, writ denied, 99-1687 (La.11/12/99), 749 So.2d 653.
The evidence at the pre-trial hearing on the motion to suppress, as well as the trial testimony,[5] shows that the *67 officers arrived at defendant's residence armed with a warrant authorizing them to search the premises. While the other officers remained at the house, Det. Lloyd located defendant in the neighborhood. Defendant does not claim that he was wrongfully detained. Instead, he acknowledges that he voluntarily accompanied Det. Lloyd when he realized the officer was looking for him.
Det. Koenig testified that when Lloyd arrived at the residence with defendant, he (Koenig) verbally advised defendant of his rights. The officer also told defendant that he was being investigated. When asked to detail the rights as they were explained to defendant, Koenig testified:
"He was advised of his rights. He didn't have to answer any questions without an attorney. If he couldn't afford an attorney, one would be appointed to him. He didn't have to answer any questions unless he had an attorney or appointed attorney with him at the time of questioning."
Defense counsel argued to the trial court that Koenig had failed to indicate whether he had informed defendant that anything he said might be used against him. Koenig stated he did not recall his exact words to defendant that day, but that these were the words he normally used to advise suspects of their rights. He did not read defendant his rights from a card. However, he has arrested quite a few people in his fifteen years on the police force, and has advised each of them of their rights. Based on his testimony, it seems likely that the officer fully recited the Miranda warnings to defendant.
Koenig testified that defendant did not ask to speak to an attorney. Moreover, the officer indicated that defendant did not say anything until after his rights were administered. Koenig asked defendant whether he had any guns or narcotics in the house. Defendant replied that he did. Defendant then showed the officers a gun sitting on a television set and some marijuana hidden under a bed. Det. Lloyd also testified that Koenig advised defendant of his rights before questioning him. Based on the foregoing facts, sufficient showing is made that defendant was sufficiently advised of his rights prior to questioning, and that he made the statement regarding the location of the contraband voluntarily and without duress.
Defendant complains that the verbal advisal of rights was not sufficient, and that he was not given a written rights form until he was transported to the police station. Det. Louis Adams indeed testified that he issued defendant a rights of arrestee form on the way to the station. The place of the written form in the sequence of events is of no consequence, however, as long as the initial verbal advisal was proper. The lack of a signed waiver of rights form does not, by itself, require the suppression of a defendant's statement. Normand, 98-1312 at p. 7, 735 So.2d at 904; State v. McCorkle, 97-966, p. 7 (La.App. 5th Cir. 2/25/98), 708 So.2d 1212, 1216. In deciding the admissibility of a statement, the trial judge must consider the totality of the circumstances. Further, the trial judge's decision in this regard is entitled to great weight and will not be overturned unless it is not supported by the evidence. Normand 98-1312 at p.7, 735 So.2d at 905; State v. Green, 94-0887, p.11 (La.5/22/95), 655 So.2d 272, 281.
At the conclusion of the pre-trial motion hearing, the trial judge denied the motions to suppress statements and evidence. The court reasoned that the statement was made, and the evidence consequently seized, after defendant had been sufficiently advised. In addition, the court noted that the evidence pointed out by defendant would inevitably have been found upon execution of the search warrant.[6] Defendant *68 does not show that the judge's findings constitute an abuse of discretion, and therefore this assignment of error does not merit reversal of defendant's convictions.
As defendant's second assignment of error, he alleges that he received ineffective assistance of counsel when his attorney failed to object to the manner in which the search of the residence was conducted. Defendant complains that his trial counsel was deficient in failing to object to the officers' entry of his home when he was not present: he complains that trial counsel's motion to suppress the evidence did not encompass a challenge to the procedures officers used in executing the search warrant, thus depriving him of a viable argument for suppression. A reading of counsel's written motion, as well as the transcript of the hearing on the motion, show that counsel did not specifically object to the procedures used by the officers in executing a "no-knock" entry to execute the warrant on defendant's premises.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Hamilton, 92-2639, p. 4 (La.7/1/97), 699 So.2d 29, 31; State v. Alexis, 98-1145, p. 20 (La.App. 5th Cir. 6/1/99), 738 So.2d 57, 71. The record in the instant case is sufficient to facilitate a review of defendant's claim, so, therefore, we will address the merits of this assignment of error.
A defendant is entitled to effective assistance of counsel under Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a twopronged test is employed. The defendant must show (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Williams, 98-1146, p. 16 (La.App. 5th Cir. 6/1/99), 738 So.2d 640, 652.
To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Williams, 98-1146 at p.16, 738 So.2d at 652. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (1983).
Det. Koenig testified that, as the officers approached defendant's house in order to execute the search warrant, they saw a black male run from the porch. While Det. Lloyd gave chase to the fleeing man, Koenig and other officers entered and secured the house. The front screen door was closed but unlocked, and the officers found the house to be vacant. When Det. Lloyd arrived at the house with defendant, Koenig advised defendant he was under investigation, and showed him the search warrant. Det. Adams testified that he heard Koenig advise defendant about the search warrant, but did not recall whether Koenig had shown the warrant to defendant.
LSA-C.Cr.P. art. 164 provides: "In order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title V." The provisions pertaining to arrest are found in LSA-C.Cr.P. arts. 201 et seq. Louisiana's knock-and-announce requirements are found in LSA-C.Cr.P. art. 224:

*69 In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
In Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the defendant was convicted on narcotics charges in an Arkansas state court. Police obtained a search warrant for the defendant's home after an informant purchased narcotics from defendant on the premises. When officers arrived at the residence to execute the warrant, they found the main door open. While entering the house, they identified themselves as police officers and stated they had a warrant. Once inside the home, the officers seized various types of narcotics, as well as drug paraphernalia, a gun and ammunition. They also found the defendant in the bathroom flushing marijuana down the toilet. The defendant and her boyfriend were arrested.
Prior to trial, the defendant filed a motion to suppress the evidence, asserting that the search was invalid on various grounds, including the failure of officers to "knock and announce" prior to entering. The trial court denied the motion. The defendant raised the issue again on appeal. The Arkansas Supreme Court rejected the defendant's argument, and affirmed the defendant's conviction. The United States Supreme Court reversed the defendant's conviction.
The Wilson Court considered whether Fourth Amendment protections mandate that officers knock and announce their presence and authority before entering a dwelling, as required under the common law. The Court held that the knock-and-announce principle should form a part of the Fourth Amendment reasonableness inquiry. "This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." Wilson, 514 U.S. at 934, 115 S.Ct. at 1918. The Supreme Court remanded the case to the state courts for a determination of the circumstances under which an unannounced entry is reasonable under the Fourth Amendment, with the further comment that the risk of destruction of "easily disposable narcotics evidence" could indeed provide justification for an unannounced entry. Wilson, 514 U.S. at 937, 115 S.Ct. at 1919.
In Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Supreme Court found that the Fourth Amendment does not permit a blanket exception to the knock and announce requirement simply because the case involves a drug investigation. The Richards Court stated:
In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard-as opposed to a probable cause requirement-strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries ... This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.
520 U.S. at 394, 117 S.Ct. at 1421-1422.
In State v. Thompson, 97-0368, p. 7 (La.App. 4th Cir. 4/23/97), 693 So.2d 282, 285, the Fourth Circuit relied primarily on Wilson in holding that officers' unannounced *70 entry into a residence in broad daylight, using a battering ram, to execute a search warrant, was unreasonable. The court found there was no proof of circumstances which justified a failure to knock and announce. The officers in Thompson received an anonymous tip that the drugs were being sold from a particular residence. The officers set up a controlled buy, then obtained a search warrant for the house. The officers opened the door with the battering ram, found the defendant, and saw him throw down a bag of crack cocaine. Finding the unannounced entry was unlawful, the Thompson Court affirmed (in a two-to-one decision) the trial court's suppression of the evidence.
In another post-Wilson case, State v. Miskell, 98-2146 (La.10/19/99), 748 So.2d 409, the Louisiana Supreme Court upheld the district court's denial of a motion to suppress evidence. In that case, the police received information from a confidential informant that an older black gentleman (the defendant) was selling cocaine from his residence in New Orleans. The officer verified this information by supervising an informant's controlled buy from the defendant.
Later that day, the officer returned to the defendant's residence to execute a search warrant. During a short surveillance, the officer saw the defendant participate in several transactions. Utilizing this information, the officer obtained a search warrant for defendant's residence. The officer and his backup team drove a van equipped with a winch to the defendant's house. They used the winch to remove the burglar bars from the front door. The officers kicked in the front door and entered. They found the defendant in a front room, and ordered him to lie on the floor. The defendant discarded a plastic bag, and the officers found it contained cocaine. They placed the defendant under arrest. A search of the residence uncovered several other people. A search incidental to the defendant's arrest revealed he had a tobacco can in his pocket containing 76 pieces of crack cocaine.
At the hearing on the defendant's motion to suppress evidence, a detective testified that the police conducted a no-knock entry of the defendant's residence, although the confidential informant had neither mentioned any threat to safety nor provided them any information about weapons. The officer further testified that in general, no-knock entries are utilized because of safety concerns and to prevent suspects from destroying narcotics evidence. According to the detective, the van with the winch was taken to the house in case the door to the residence was locked.
Basing its own decision largely on the Wilson and Richards decisions, the Louisiana Supreme Court found the officers' manner of entry did not violate the defendant's Fourth Amendment rights. The court found that the officers were justified in their manner of entry, given the amount of information they had about the defendant's activities. The court found that the determination of reasonableness was further supported by the presence of burglar bars on the main entrance of a building where drug activity was taking place. The court found it reasonable for the officers to infer that the presence of the burglar bars was intended as much to slow down the entry of police as to protect the occupants from criminals. Though the testimony adduced at the motion hearing did not indicate that officers had any information creating an exigent circumstance prior to executing the search warrant, the Miskell Court reasoned that, "... it is well recognized that a police officer's past experience, training, and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable." 748 So.2d at 412.
The instant case is comparable to Miskell in that none of the officers in either case could testify that they suspected defendant was armed, thus dangerous, or that they had previous knowledge someone *71 was inside the house destroying evidence. However, as in Miskell, we must defer to reasonable inferences drawn from whatever factors the developing situation presented to trained, experienced law enforcement officers. What the officers here related was that as they approached the house where a CI had very recently made a drug purchase, they were confronted with a closed front screen door and an individual on the porch who immediately fled upon their arrival. It does not take trained law enforcement officials to realize that the officers' duty to "announce" their entry has been otherwise satisfied when any noise they make in approaching the house, and attempting to stop a fleeing suspect, can be heard by anyone sitting on the other side of a, for all practical purposes, open front door. And these facts would plainly create the inference in the minds of knowledgeable and experienced officers that as soon as any other occupants of the house identified the source of the noise outside, those remaining would attempt either to escape or destroy the contraband. The immediate entry, therefore, after the search and arrest had been "imperiled," through the unlocked screen door, was, under the circumstances, reasonable under Fourth Amendment principles. LSA-C.Cr.P. art. 224.
Moreover, we note that the instant case is distinguishable from Miskell in the manner in which the officers actually entered defendant's residence. In the Miskell case, the officers used a winch to pry burglar bars from a door frame, kicked in the door, and entered the house with weapons drawn. Miskell, 748 So.2d at 410. Here, the officers, once they were justified in entering the house, simply secured the premises to prevent other individuals from following the one fleeing the porch and to prevent the destruction of any contraband. They then waited for defendant before they searched the house in a fairly non-invasive and wholly not destructive manner. Because defendant has not shown that he was denied relief on a constitutional claim below, he cannot show that his counsel was ineffective in failing to pursue the claim.
All of the above notwithstanding, even had the officers' actions in entering defendant's home been improper, it does not appear that defendant was prejudiced by counsel's failure to make an objection. Defendant was not at home when the officers arrived, and the officers would have received no response had they knocked on the door and announced their presence. Moreover, the testimony at the motion hearing and at trial shows that the officers only secured the residence upon their initial entry, and did not begin their search until defendant arrived. Defendant has not shown that this error requires reversal of his conviction.
As defendant's third and last assignment of error, he alleges that the evidence was insufficient to support the verdict of guilt to the charge of possession with the intent to distribute marijuana. By this assignment, defendant argues the state failed to show that the marijuana seized from his residence was intended for sale. The standard to be used by the appellate court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. Jordon, 98-823 (La.App. 5th Cir. 3/10/99), 732 So.2d 569.
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. LSA-R.S. 40:966 A. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. *72 14:10(1). The intent to distribute may be established by proving circumstances surrounding a defendant's possession which give rise to reasonable inference of intent to distribute. State v. Mills, 95-359, p. 8 (La.App. 5th Cir. 11/15/95), 665 So.2d 489, 494.
Factors used by the courts in determining whether circumstantial evidence is sufficient to prove the intent to distribute include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Hearold, 603 So.2d 731, 735 (La.1992); Mills, 95-359 at p. 9, 665 So.2d at 494. In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. Hearold, 603 So.2d at 735. See also, State v. Perkins, 97-1119, p. 18 (La.App. 3rd Cir. 6/17/98), 716 So.2d 120, 130.
Defendant complains that the evidence at trial was not sufficient to prove the element of intent. The evidence established that the officers found approximately 74 grams of loose marijuana under defendant's bed, along with about nine grams of marijuana contained in hollowed-out cigars. Although there was testimony at the motion hearing that a confidential informant had purchased marijuana from defendant, none of the state's witnesses at trial testified to having witnessed or been a party to a sale by defendant. Det. Koenig testified that he did not conduct a surveillance of defendant's house before executing the search warrant and there was no evidence that defendant had been convicted of selling or attempting to sell narcotics in the past.
Det. Price of the police department's narcotics unit explained how he has seen marijuana packaged for sale. According to Price, marijuana is usually sold in "nickel" bags (five dollars' worth), "dime" bags (ten dollars' worth), or in "blunts." A blunt is a street term for a cigar from which the tobacco is emptied and replaced with marijuana. Det. Koenig, who has arrested a large number of people on narcotics charges, testified that blunts usually sell for three to five dollars each. He further stated that bags might contain one-quarter to one-half ounce or more of the drug. Koenig testified that marijuana is also sold in "joints," or hand-rolled cigarettes. Plastic sandwich bags, commonly used in packaging marijuana, were found in defendant's home, though, apparently, no paraphernalia for preparing joints was found. Price testified the officers did not find any of the marijuana divided into dime or nickel bags. Nor could Koenig, or any other testifying officer, say how many blunts, or joints, could have been made with the marijuana found under defendant's bed, or how many nickel or dime bags the amount would have provided Koenig testified that both blunts and joints are generally made with varying amounts of marijuana. The return on the search warrant indicates there were a total of twenty-four cigars. Edgar Dunn's crime lab report indicates that at least five of the cigar wrappings contained marijuana.
We note the existence of another factor, seizure of "large sums of cash," which can, depending on circumstances, be indicative of drug distribution. Hearold. 603 So.2d at 736. In this case, there is some confusion as to how much money was actually seized from defendant's house and/or his personthe return of the search warrant indicates that $269.00 was seized, but does not indicate where the money was found; testimony at the suppression hearing and trial was not clear on whether the officers *73 found money under defendant's bed and seized some from defendant's person. The actual amount of money, therefore, may have been as little as the $269.00 as shown on the warrant return, and if the $200.00 referred to in testimony was indeed an additional amount seized, the total amount would only be increased to $469.00. No testimony was offered as to the significance of the money. And in comparison with sums seized from some defendants convicted on distribution charges, even $469.00 is not such a "large sum" as to imply that it cannot have been derived from any source other than drug sales. If only large amounts of controlled substances necessarily imply drug distribution, then certainly possession of cash in an amount kept on hand by many law abiding citizens should not necessarily imply drug distribution. We note finally that there was no testimony regarding how much money the CI had been given or how much he may have used, and there was no testimony, from any investigating officer, positively identifying any of the money seized from defendant as the money given the CI by the officers.
None of the officers who testified at trial was qualified as an expert in the packaging and sale of narcotics. More importantly, there was no testimony whatsoever as to whether or not the amount of marijuana found at defendant's residence was consistent with personal use. The plastic sandwich bags and the cigar casings might be considered indicative of defendant's intent to sell the marijuana found in his house. However, there was little at trial to support a finding that the amount of marijuana seized was so great as to eliminate any other inference (i.e., that the marijuana was intended for personal use).
Compare State v. Perkins, cited above, in which the defendant was convicted of possession of marijuana with intent to distribute. The defendant in that case was in his parked car with two men who were in the process of making blunts. When police officers approached the car, the defendant and one of his companions fled. The third occupant of the car did not flee. Officers looked inside the car and found on the seat, in plain view, a handgun, some blunts, and a bag containing marijuana cigarettes and loose marijuana. The occupant of the car was immediately arrested, and the defendant, in whose name the car was registered, was arrested later.
At trial, a police detective testified that the number of hand rolled cigarettes (15) and the number of blunts (one completed and one partially completed) suggested an intent to distribute. However, the officer did not indicate that this number was inconsistent with personal use. Moreover, the amount of loose marijuana seized was not established. There was no evidence that the defendant attempted to sell the marijuana the night of his arrest, or that he had distributed narcotics in the past.
On appeal, the court found the evidence was insufficient to establish that Perkins had the specific intent to distribute marijuana. The court found that only one of the five enumerated factorsthat the marijuana was in a form associated with distributionwas present. The court further noted, however, that there was no testimony that such packaging was inconsistent with personal use, particularly considering the presence of the defendant's two companions, who could have shared the marijuana among themselves. The Perkins Court, under the authority of LSA C.Cr.P. art. 821E, vacated the defendant's conviction and remanded the case with an order that the trial court enter a judgment of guilty of simple possession of marijuana. Perkins, 97-1119 at p.19, 716 So.2d at 130.
As in Perkins, the State in the instant case failed to satisfy more than one or two of the five enumerated factors in support of intent to distribute. A key element, evidence that the marijuana seized was not consistent with personal use, is missing. Based on the foregoing, we find that proof of intent was insufficient under the Jackson standard. Defendant's conviction for possession with intent to distribute marijuana *74 is therefore vacated, and the trial court is ordered to enter a verdict of guilty of simple possession of marijuana on Count 2 of the indictment. LSA-R.S. 40:966D.
Finally, we note that record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The following error was detected. As to Count 1, possession of a firearm by a convicted felon, the trial court was required by statute to impose a mandatory fine of not less than one thousand dollars, nor more than five thousand dollars. LSA-R.S. 14:95.1. The court failed to impose the mandatory fine, and the sentence is thus illegally lenient. The State has not sought correction of the sentence below, however, nor has it raised the issue on appeal. This Court will not, on our own motion, vacate sentences which are illegal due to the failure to impose a mandatory fine, when the defendant alone has appealed, and the prosecutor has not sought review. State v. Pickett, 99-532 (La.App. 5th Cir. 10/26/99), 746 So.2d 185. See also, State v. Fraser, 484 So.2d 122 (La.1986).
For the above reasons, defendant's assignments of error numbers one and two do not require reversal of his conviction for possession of a firearm by a convicted felon, but as his as his assignment of error number three requires that we vacate his conviction of possession with intent to distribute marijuana, and the sentence imposed for this conviction, we enter a verdict of guilty under LSA-R.S. 40:966 D, the lesser and included charge of simple possession of marijuana, and remand this matter so that the trial judge can sentence defendant under the appropriate guidelines and amend the minute entry and commitment form to reflect the amended verdict and sentence.
CONVICTION FOR ILLEGAL WEAPON CHARGE AFFIRMED; CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA VACATED; REMANDED FOR SENTENCING ON CONVICTION OF SIMPLE POSSESSION OF MARIJUANA.
NOTES
[1] Defendant was sentenced after August 15th, 1999, the effective date of an amendment to LSA-C.Cr.P. art. 930.8 which reduces the period for seeking post-conviction relief from three years to two years. See 1999 La. Acts 1262.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Although it is not made clear by the testimony, the crime lab report indicates that at least some of the cigars contained marijuana.
[4] Det. Koenig testified that approximately $200.00 was found in a cigar box under the bed. This is not, however, indicated in the return on the search warrant, and other testimony introduced further doubt that the money seized included an amount retrieved from under the bed. No testimony, nor does the minute entry, indicate that the total amount was $469.00.
[5] In reviewing the trial judge's ruling on a motion to suppress, the court may consider evidence presented at the motion hearing as well as at trial. State v. Fisher, 97-1133, p. 4 (La.9/9/98), 720 So.2d 1179, 1182.
[6] The inevitable discovery rule provides that, when the evidence in question would inevitably have been discovered without reference to any police error or misconduct, there is no nexus sufficient to provide a taint, and the evidence is admissible. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); State v. Nelson, 459 So.2d 510, 515 (La.1984).