748 So.2d 409 (1999)
STATE of Louisiana
v.
Lee MISKELL.
No. 98-KK-2146.
Supreme Court of Louisiana.
October 19, 1999.
*410 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, District Atty., Valentin M. Solino, Counsel for Applicant.
Charles Gary Wainwright, New Orleans, Counsel for Respondent.
KNOLL, Justice.[*]
In this criminal writ application, we are called upon to determine whether evidence seized pursuant to a search warrant should be suppressed because the police officers allegedly lacked reasonable suspicion that justified their no-knock entry and forced removal of burglar bars at the front entrance of defendant's residence. For the following reasons, we reverse the court of appeal and reinstate the trial court's ruling, finding the police officers articulated a reasonable basis to support their no-knock entry of defendant's residence.

FACTS
The record establishes that a confidential informant told Detective Michael Harrison on August 1, 1997, that an older black gentleman, later identified as defendant, was selling crack cocaine from his residence at 6716 Tara Lane in New Orleans. Based upon this information, Detective Harrison accompanied the informant to the neighborhood where defendant's residence is located in New Orleans East, provided him with cash to make a controlled purchase, and observed the informant purchase drugs from defendant at defendant's front door. After the informant met with Detective Harrison, it was determined that the informant purchased three pieces of crack cocaine from defendant. Utilizing this information, Detective Harrison obtained a search warrant at approximately 3:00 p.m. to search defendant's residence.
Thereafter, Detective Harrison returned to defendant's neighborhood where he again watched defendant conduct three more drug transactions in a matter of thirty minutes, one at defendant's front door *411 and two at a vehicle parked in front of defendant's residence. In the last two purchases, Detective Harrison observed defendant retrieve what appeared to be drugs contained in a tobacco can in his pocket and exchange that material for cash from the purchasers.
At approximately 5:00 p.m., Detective Harrison joined six other police officers at a nearby location. From there they drove in a van equipped with a winch to execute the search warrant at defendant's residence. The winch was used to pull the burglar bars off defendant's front door. The main door of the home was then kicked in and the officers made an unannounced entry with their guns drawn.
Once inside, Detective Harrison remained with defendant and defendant's grandchild in the front room while the other officers searched the upper floor of the residence and the other ground floor rooms. When the detective ordered defendant to lie on the floor, he observed defendant attempt to discard a piece of plastic and then conceal it by lying on top it. When Detective Harrison retrieved the plastic, he determined that it contained a white powdered substance that resembled cocaine. After advising defendant of his Miranda rights, the detective searched defendant incident to an arrest. When defendant was searched, Detective Harrison found a tobacco can which contained seventy-six individually wrapped pieces of crack cocaine and $200 in defendant's shirt pocket. The detective also found a .38 caliber handgun on the entertainment center in the front room. Although the other officers found several other individuals on the second floor, no other contraband was discovered.

PROCEDURAL HISTORY
The defendant filed a written motion to suppress evidence and a hearing was conducted.[1] Under cross-examination at the hearing, Detective Harrison testified that the police conducted a no-knock entry of defendant's residence and that the confidential informant neither mentioned any threat to safety nor provided information about weapons. He further testified in general that no-knock entries are utilized because of safety concerns and as a means to thwart the destruction of easily disposed drugs when the police employ standard knock-and-announce procedure. In addition, Detective Harrison stated that the van equipped with the winch was taken to defendant's residence in case the door to the residence was locked. In finding exigent circumstances to justify the no-knock entry, the trial court stated:
I'm going to rule against you [defendant] today basically because I think the burglar bars present ... an added element *412 to the matter plus the fact that in this particular case, there was some testimony at trial that Mr. Miskell [defendant] was actually the one seen in the transaction dealing with drugs....
Accordingly, the trial court denied defendant's motion to suppress. On appeal, the Fourth Circuit granted defendant's writ application and reversed the trial court's decision, finding that the State failed to show any exceptional circumstances to warrant an unannounced entry of the residence. State v. Miskell, 98-1470 (La.App. 4 Cir. 7/8/98), 715 So.2d 1261. We granted the State's writ application to review the correctness of the appellate decision. State v. Miskell, 98-2146 (La.11/25/98), 729 So.2d 580.

ANALYSIS
In Louisiana, a peace officer who executes a search warrant may use such means and force as is authorized for an arrest. LA.CODE CRIM.P. art. 164. As provided in LA.CODE CRIM.P. art. 224, the provision which governs forcible entry when making an arrest, the requirement for knock-and-announce in Louisiana is enunciated as follows:
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
In Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court established that the Fourth Amendment to the United States Constitution incorporates the common law requirement that police officers entering a residence must knock on the door and announce their identity and purpose before attempting forcible entry to execute a search warrant. Id. at 929, 934, 115 S.Ct. 1914. Nevertheless, the Court carefully recognized that not "every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." Id. at 934, 115 S.Ct. 1914. Accordingly, the Court stated that, "[w]e simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interest may also establish the reasonableness of an unannounced entry." Id. at 936, 115 S.Ct. 1914. The Court left to the lower courts the task of determining which circumstances make an unannounced entry reasonable and implied that the knock-and-announce requirement could yield "under circumstances presenting a threat of physical violence," or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." Id.
A few years later, in Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), a case which rejected a blanket exception to the knock-and-announce requirement in felony drug cases, the Supreme Court articulated the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. There, the Court held that police officers may dispense with the knock-andannounce requirement when "they have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Id. at 394, 117 S.Ct. 1416.
The Court further stated that the reasonable suspicion standard, as opposed to a probable cause requirement "strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and individual *413 privacy interest affected by the no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." Id.
Later, in United States v. Ramirez, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), the Supreme Court announced that its decisions in Wilson and Richards "serve as guideposts in construing" 18 U.S.C.A. § 3109,[2] the Federal counterpart to LA.CODE CRIM.P. art. 224. We are likewise guided by Wilson and Richards in our analysis of the facts presented herein.
Whether circumstances existed at the time of the entry, and whether these circumstances justify the extent of the noncompliance with the knock-and-announce requirement is determined by an analysis of the facts of each case. Richards, 520 U.S. at 394, 117 S.Ct. 1416. For a no-knock search to pass constitutional muster, police officers must have some particularized basis for their reasonable suspicion. United States v. Grogins, 163 F.3d 795, 797 (4th Cir.1998).
In Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the Supreme Court specifically addressed the concepts of "reasonable suspicion" and "probable cause," stating:
Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are commonsense, nontechnical conceptions that deal with "`the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)(quoting Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)); see United States v. Sokolow, 490 U.S. 1, 7-8, 109 S.Ct. 1581, 1585-1586, 104 L.Ed.2d 1 (1989). As such, the standards are "not readily, or even usefully, reduced to a neat set of legal rules." Gates, supra at 232, 103 S.Ct. at 2329... We have cautioned that these two legal principles are not "finely-tuned standards," comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of evidence. Gates, supra, at 235, 103 S.Ct., at 2330-2331. They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed. Gates, supra, at 32[232], 103 S.Ct., at 2329; Brinegar, supra, at 175, 69 S.Ct., at 1310.
* * *
The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *414 Pullman[-]Standard v. Swint, 456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 1791, n. 19, 72 L.Ed.2d 66 (1982).
* * *
[W]e hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences draw from those facts by resident judges and local law enforcement officers.
A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference. Ornelas, 517 U.S. 695-99[, 116 S.Ct. 1657].
In Louisiana, like the pronouncements enunciated in Ornelas, it is well recognized that a police officer's past experience, training, and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Smiley, 99-0065 (La. App. 4 Cir. 3/3/99), 729 So.2d 743, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651; State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142; State v. Willis, 31,561 (La.App. 2 Cir. 1/20/99), 728 So.2d 493 (reasonable suspicion in the context of probable cause needed for an arrest); State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99), 731 So.2d 319 (reasonable suspicion for an investigatory stop).
Applying these standards to the present case, it is clear that several factors support the reasonableness of the noknock entry found by the trial court.[3] The showing of probable cause for the issuance of the search warrant was well made through the confidential informant's detailed knowledge of defendant's activities. Moreover, Detective Harrison had information garnered from his personal observation of the alleged illegal goings-on at defendant's residence. Not only did the detective observe the confidential informant's controlled buy from the defendant at 6716 Tara Lane, the police officer watched defendant conduct a drug transaction from the front door of his residence and two more near an automobile parked in front of the residence just prior to entering to execute the warrant. It was at this latter time that Detective Harrison observed defendant furnish what appeared to be drugs from a tobacco can that he carried on his person. Although Richards, 520 U.S. at 392, 117 S.Ct. at 1421, recognized that not every drug investigation will pose the risk of the destruction of evidence, it is clear in the present case that the evidence showed that the defendant's possession of the drugs on his person in readily saleable quantities established the requisite concern for the preservation of evidence if advance warning of entry were given.
The determination of reasonableness is further fortified by the presence of the burglar bars on the main entrance of the building where drug sales were conducted up to the time just prior to execution of the search warrant. See United States v. Hawkins, 102 F.3d 973, 976 (8th Cir.1996). Given this information, we find it reasonable for the police to infer that the presence of the burglar bars were intended as much to slow down the entry of the police as to protect the occupants from criminals. As such, it was reasonable for the police to infer that the delay they would encounter in overcoming the barricade at the front *415 door after waiting to knock and announce their presence would only increase the likelihood that defendant would be able to dispose of the drugs he possessed on his person before entry could be successfully accomplished.
Based upon this showing, we find the police easily articulated a reasonable suspicion that not only would a knock-and-announce entry inhibit their criminal investigation by allowing the defendant ample time to discard any drugs that remained on his person, but would also expose the officers executing the warrant and the individuals inside the residence to serious threat of harm that this barricade presented. The factors enunciated above, when viewed together,[4] militate in favor of finding that defendant's privacy interests must yield to the reasonableness of a no-knock entry under the facts presented.
We hasten to add that the factual scenario presented to the trial court in the present case all but eliminates the chance that the horrific results outlined in State v. Richards, 201 Wis.2d 845, 549 N.W.2d 218 (1996) (Abrahamson, C.J., concurring) could have occurred. The showing of probable cause for the warrant was extremely high. Detective Harrison's observation at defendant's residence of the controlled buy from the defendant, a person whom he had previously encountered, together with the drug purchases observed just prior to execution of the search warrant obviated any concern that the informant was misinformed or inaccurate. Likewise, since Detective Harrison witnessed these activities at 6716 Tara Lane, there was no chance that the warrant was being executed at the wrong residence. Finally, we were not presented with burglar bars on the front door of a residence strictly associated with normal security measures. To the contrary, defendant's fortified residence was the scene of brisk drug sales just prior to execution of the search warrant.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and we reinstate the judgment of the trial court which denied defendant's motion to suppress the evidence. This case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
KIMBALL and JOHNSON, JJ., dissent and assign reasons.
KIMBALL, J., dissenting.
In my opinion, the majority misapplies the holding of Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) by creating a blanket exception to justify a no-knock entry in cases involving burglar bars. The unanimous holding of Richards makes clear that no per se exception to the general rule that, under the Fourth Amendment, police knock and announce themselves when executing a warrant exists in searches involving narcotics, despite the case with which drugs may be discarded or destroyed and despite the known association of drugs and firearms. The burglar bars at issue in this case constitute the kind of security measure, such as solid doors or a deadbolt, that alone may not give rise to a reasonable suspicion justifying a no-knock entry. Such security measures represent the protective steps anyone may take to guard his or her property, not for purposes of impeding the entry of the police, as the majority seems to conclude, but to secure the premises generally. The security measures used by the defendant in this case do not distinguish him from hundreds of other homeowners in the city of New Orleans. Further, they certainly create no more *416 exigency than a closed and dead bolted door. Therefore, I would affirm the holding and reasoning of the court of appeal.
For these reasons, I respectfully dissent.
JOHNSON, J., dissenting.
Thousands of law-abiding citizens in Louisiana will be shocked to discover that the burglar bars they installed for security reasons now provide the reasonable circumstances necessary for the police department to kick in their doors and make an unannounced entry of their homes. According to the majority, it is reasonable for the police to infer, from the presence of burglar bars, that the occupants intended to slow down the entry of the police, as much as to protect themselves from criminals. Everywhere else in America police officers must adhere to the standard set forth by the United States Supreme Court in Richards v. Wisconsin, where the Court stated:
In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard-as opposed to a probable cause requirement-strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and individual privacy interest affected by the no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.
520 U.S. 385, 394, 117 S.Ct. 1416, 1421-22, 137 L.Ed.2d 615 (1997) (citations omitted).
This case represents a "no-knock" entry in the execution of a search warrant for drugs. The investigating officer went to the defendant's residence with seven other officers and a van equipped with a winch to execute the search warrant. The officers briefly watched the residence and observed what appeared to be three more drug transactions. Thereafter, the winch was used to rip burglar bars off the front door, the door was kicked in, and the officers made an unannounced entry of the defendant's residence with guns drawn.
The only justification offered by police for the no-knock entry was the known ease with which drugs may be discarded or destroyed. Clearly, this justification alone does not meet the reasonableness standard set forth in Richards. The facts of this case make clear that the officers had no information creating an exigent circumstance prior to executing the search warrant. The informant did not mention any weapons that would create the possibility of danger if the officers' presence was announced, the prior surveillance had not revealed the presence of any other persons in the residence to aid in the destruction of evidence, and the defendant had no history of violence.
Today, most homes are equipped with some form of security device. Burglar bars have become one of the tools adopted by law-abiding citizens in the protection of their homes and property. The mere presence of such devices does not indicate an intention to prevent the police from gaining admittance to a home. While it is true that under certain circumstances the use of extreme security measures, such as a combination of burglar bars, attack dogs, and surveillance cameras may well justify a no-knock entry; such is not the case here. I cannot support a decision that allows the police to justify "no-knock" entries with the mere presence of burglar bars, and I respectfully dissent.
NOTES
[*] Calogero, C. J., not on panel. See Rule IV, Part 2, § 3.
[1] "An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief." LA.CODE CRIM.P. art. 703(E)(1). An examination of defendant's motion to suppress shows that no facts were alleged which would have required a hearing and no mention was even made of the reasonableness of the no-knock entry. Moreover, not only did defendant fail to allege facts in support of his motion, the motion was directed to a search conducted without benefit of a search warrant, a situation not even applicable to the present case. Compounding this error was the trial court's procedure which required the State to initiate the presentation of evidence at the hearing on the motion. Clearly, since the State had obtained a search warrant, the burden of proof was on the defendant to prove the ground(s) of his motion and, as such, should have been the party to proceed first with the presentation of evidence. La. Code Crim.P. art. 703(D). It is the purpose of proper procedure to fine tune the issues presented not as an element of gamemanship, but rather so that unwarranted prejudice arising from surprise testimony and evidence is avoided and the trial court is presented with fully illuminated issues ready for adjudication. See State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686 (purpose of criminal discovery rules). In the present case, it is clear that the State was not aware of defendant's objection to the no-knock entry until well into defendant's cross-examination of Detective Harrison. We reach the issues presented in the present case only because the State failed to object to the defendant's expansion of the motion through testimony which exceeded the scope of his pleadings.
[2] 18 U.S.C.A. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
Because of the absence of Federal involvement in the present search, 18 U.S.C.A. § 3109 is inapplicable. United States v. Murphy, 69 F.3d 237 (8th Cir.1995), cert. denied, 516 U.S. 1153, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996).
[3] The reasonableness test enunciated in Wilson and Richards is not new to Louisiana jurisprudence. State v. Thomas, 329 So.2d 704, 706 (La.1976); State v. Thorson, 302 So.2d 578 (La.1974); State v. Christiana, 249 La. 247, 186 So.2d 580 (1966); State v. Johnson, 534 So.2d 1322 (La.App. 4 Cir.1988). Likewise, as stated in Johnson, Louisiana does not recognize a blanket no-knock exception in all searches for narcotics. Johnson, So.2d at 1327.
[4] Although more articulated facts may have made our analysis easier, see, e.g., United States v. Cooper, 168 F.3d 336 (8th Cir.1999), United States v. Grogins, 163 F.3d 795 (4 th Cir.1998), United States v. Mattison, 153 F.3d 406 (7th Cir.1998), United States v. Bailey, 136 F.3d 1160 (7th Cir.1998), when the facts are viewed as a composite rather than in isolation, the facts established at the hearing warrant a finding of reasonableness.