|, MURRAY, Judge.
We grant the State’s writ application to review its contention that the trial court erred in granting a motion to suppress evidence seized while executing a search warrant. We find that under the facts of this case and the applicable jurisprudence, the seizure was illegal and the evidence was properly suppressed. Accordingly, for the reasons stated below, the trial court’s judgment is affirmed.
FACTS AND PROCEEDINGS BELOW
New Orleans Police Detective Steven Payne testified at the motion hearing that on November 30, 2000, he obtained a warrant to search a residence located at 2010 Lizardi Street. Detective Payne averred in the affidavit in support of the search warrant that within seventy-two hours of November 29, 2000, he had spoken with a reliable confidential informant who stated that crack cocaine was being distributed from the residence by a black male known as “Skee .” The C.I. described “Skee” as approximately 5'10" to 6' tall, medium build, and thirty-five to forty years old. The C.I. further stated that the crack cocaine “is normally hidden |2in the residence.” Detective Payne queried the NCIC computer and learned that several different people had been arrested for narcotics violations at 2010 Lizardi Street. The affidavit then recounted a controlled buy made by the C.I. from “Skee” at the Lizardi Street residence: As officers watched, “Skee” met with the C.I., entered the residence, then exited and gave the C.I. what was shown by subsequent testing to be one piece of crack cocaine.
Detective Payne further testified that, on December 6, 2000, six days after the search warrant had been issued, Detective James Fosha was conducting a surveillance of the targeted residence while Detective Payne was at the station assembling a team of officers to execute the warrant. Detective Fosha was instructed to advise Detective Payne if he observed “the target or anybody in the residence that would be home at that time.” Detective Fosha saw a black male exit then return to the residence, but the detective could not determine if the individual was “Skee.” When Detective Payne and his team arrived at the residence, they entered and saw the defendant, Ralph Stewart, on the couch within inches of approximately six grams of crack cocaine and a crack pipe. Mr. Stewart was immediately arrested, but it was learned that he was not “Skee,” the target of the investigation. While a search of the residence was negative for any additional contraband, the officers seized a letter addressed to Mr. Stewart at 2010 Lizardi Street.
On cross-examination, Detective Payne was first questioned about the C.I. and the controlled buy described in the warrant affidavit. He was then asked about any surveillance between the controlled buy on November 30th and the execution of the warrant on December 6th. Detective Payne testified that “[pjeriodic checks were made ... but nothing was observed. No individuals were observed hanging in lathe area, so it wasn’t — so surveillance *1055 wasn’t actually established.” While these “periodic checks” were made on different days, Detective Payne did not recall the specific dates or times, but only that he had checked the residence while driving by on patrol. He acknowledged that Mr. Stewart had not been seen engaging in any narcotics activities, either during surveillance or when the search warrant was executed.
Detective Payne was then questioned by defense counsel about the actual entry into the residence:
Counsel: How did you enter the house?
Witness: Basically, we just opened the front door. It was open.
Counsel: Did you knock first?
Witness: We announced ourselves as being police officers, and before we hit [the door] with the ram we always cheek the knob, you know, we don’t like to destroy the door if we don’t have to, and basically we just walked in.
[[Image here]]
Counsel: Did you knock first when you say that you announced yourself?
Witness: No.
Counsel: You just opened the door?
Witness: Correct.
By the Court: You never knocked?
Witness: We announced ourselves and opened the door.
Counsel: You announced yourselves as you were opening the door?
Witness: Correct.
In further cross-examination, Detective Payne was questioned on whether [4the police had received any information about weapons at the Lizardi Street residence. He stated they had not. Additionally, they ltad no information that the target of the investigation had any prior criminal history of weapons, and, in fact, the police did not even know “Skee’s” real name. Detective Payne testified that Detective Fosha had been engaged in surveillance of the residence for thirty to forty minutes before the other officers arrived to execute the warrant.
When defense counsel finished cross-examination, the trial court asked the witness to again describe the entry in the residence. The court established that the officers had a battering ram with them but did not use it because the door was unlocked. As Detective Payne described it, ‘We announced ourselves as police and we opened the door. If it wouldn’t have opened, then we would have hit it with the ram.” When the court mentioned the “knock and announce” rule, the detective replied, “Well, like I said, it was announced.”
Based upon this testimony,[1] the trial court suppressed the evidence seized from Mr. Williams. Citing United States v. Ramirez, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), the court stated that the evidence in this case did not establish that the requisite special circumstances existed to justify the officers’ failure to “knock and announce” before entering the residence.
DISCUSSION
Relying on State v. Miskell, 98-2146 (La.10/19/99), 748 So.2d 409, the State first contends that because the officers had “a search warrant which was issued because of suspected drug transactions” at that address, they “were not required to perform a knock and announce entry.” It is further argued that because ^Criminal *1056 Procedure article 224 requires only an officer’s announcement of “his authority and purpose,” the trial court erred in holding that the failure to physically knock on the door invalidated this entry.
In Miskell, our Supreme Court surveyed the relevant jurisprudence and held that Louisiana law, like the U.S. Constitution and applicable federal statutes, permits police officers executing a search warrant to “dispense with the knock-and-announce requirement when ‘they have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.’ ” Id. at 5, 748 So.2d at 412, quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615. Noting that there is no “blanket no-knock exception in all searches for narcotics,” id. at 8, n. 3, 748 So.2d at 414, the court stated that, instead, the determination of reasonableness must be made on a case-by-case basis, considering all facts known to the officers as well as their training, background and experience, id. at pp. 6-7, 748 So.2d at 413-14.
Under the facts presented in Miskell, the court found that the police acted reasonably in removing burglar bars from the front door and then entering the residence in question unannounced, stating:
The showing of probable cause for the issuance of the search warrant was well made through the confidential informant’s detailed knowledge of defendant’s activities. Moreover, Detective Harrison had information garnered from his personal observation of the alleged illegal goings-on at defendant’s residence. Not only did the detective observe the confidential informant’s controlled buy from the defendant at 6716 Tara Lane, the police officer watched defendant conduct a drug transaction from the front door of his residence and two more near an automobile parked in front of the residence just prior to entering to execute the warrant. It was at this latter time that Detective Harrison observed defendant furnish what appeared to be drugs from a tobacco can that he carried on his person. Although Richards, 520 U.S. at 392, 117 S.Ct. at 1421, recognized that not Levery drug investigation will pose the risk of the destruction of evidence, it is clear in the present ease that the evidence showed that the defendant’s possession of the drugs on his person in readily saleable quantities established the requisite concern for the preservation of evidence if advance warning of entry were given.
The determination of reasonableness is further fortified by the presence of the burglar bars on the main entrance of the building where drug sales were conducted up to the time just prior to execution of the search warrant. See United States v. Hawkins, 102 F.3d 973, 976 (8th Cir.1996). Given this information, we find it reasonable for the police to infer that the presence of the burglar bars were intended as much to slow down the entry of the police as to protect the occupants from criminals. As such, it was reasonable for the police to infer that the delay they would encounter in overcoming the barricade at the front door after waiting to knock and announce their presence would only increase the likelihood that defendant would be able to dispose of the drugs he possessed on his person before entry could be successfully accomplished.
Based upon this showing, we find the police easily articulated a reasonable suspicion that not only would a knock- and-announce entry inhibit their criminal investigation by allowing the defen *1057 dant ample time to discard any drugs that remained on his person, but would also expose the officers executing the warrant and the individuals inside the residence to serious threat of harm that this barricade presented. The factors enunciated above, when viewed together, militate in favor of finding that defendant’s privacy interests must yield to the reasonableness of a no-knock entry urn der the facts presented.
Miskell at 8-9, 748 So.2d at 414-15.
The State argues that because the circumstances seen in the instant case were much like those in Miskell, the officers acted reasonably in entering the unlocked door as they announced their presence, rather than knocking and waiting for a response. We find, however, that the significant dissimilarities between these facts and those presented in Miskell outweigh those emphasized by the State.
In the instant case, both the tip provided by the informant and the controlled buy from “Skee” had occurred more than six days before the warrant was executed, rather than the same day, as in Miskell. In that intervening period, unlike Miskell, the police saw no drug activity from, in or near the residence, and surveillance just |7prior to the officers’ arrival was also negative. Although Mr. Stewart was observed leaving the residence and returning during this 30-40 minute surveillance, he did not engage in any drug activity, as Mr. Miskell had, nor was there testimony of any suspicious behavior. Moreover, while Detective Fosha was said to have been unable to determine if the man he saw was the targeted subject, “Skee,” the trial court could see the defendant and compare his appearance to the description in the warrant.[2]
Additionally, while the defendant in Miskell was known to carry drugs on his person, thus subject to quick disposal or destruction, the affidavit presented in applying for the search warrant in this case states that “the crack cocaine is normally hidden in the residence,” suggesting that it-was not readily accessible. Significantly, the Miskell court noted the fortified nature of the targeted residence, finding that this fortification would. slow the police down greatly after they announced their presence. In the instant case, there was no testimony that the front door was fortified in any way; in fact, the residence was unlocked. In addition, Detective Payne admitted that in this case they had no information to indicate that the targeted subject habitually was armed or that weapons were associated with the residence; although other drug arrests had been made at that address, no information was provided as to when these arrests had been made.
Thus, although both cases arose from the execution of a warrant authorizing a search for drugs, the factors present in Miskell that suggested that an unannounced entry into the residence was necessary or prudent are absent in the present case. Instead, we find the facts of this case much closer to those seen in State v. Thompson, 97-0368 (La.App. 4th Cir.4/23/97), 693 So.2d 282, where this court affirmed the trial court’s suppression of evidence seized after a no-knock entry. In that case, as here, the search warrant was based on a controlled purchase by a C.I. from a woman standing inside the residence. The testifying officer explained that they decided to dispense with knocking and announcing because anyone inside the house may have been armed or could have destroyed drugs before the officers *1058 could enter. The officer conceded, however, that the police had no knowledge of firearms in the residence, but only the general suspicion that people dealing drugs often carried guns. As in the instant case, there was no evidence in Thompson of a lookout who could have alerted the occupants to the officers’ presence.
Therefore, considering the evidence presented here, we find no error in the trial court’s conclusion that under these facts, the officers were required to comply with the “knock and announce” rule before entering this residence to execute the search warrant.
The State’s second argument is that the “knock and announce” rule does not actually mandate that the police physically knock on the door when they announce their presence and enter the residence. However, this argument is not dispositive to this case, as Detective Payne clearly conceded that the officers announced their presence as they were opening the door to the residence. This precisely mirrors the actions of the police in Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), in which the United States Supreme Court established that the common law “knock and announce” rule is a part of the reasonableness analysis under the Fourth Amendment to the U.S. Constitution. In Wilson, one day after controlled drug purchases were made and during which the targeted subject waved a gun around, “[pjolice officers |9found the main door to [the defendant’s] home open. While opening an unlocked screen door and entering the residence, they identified themselves as police officers and stated that they had a warrant.” Id. at 929, 115 S.Ct. at 1915. The court explained that reasonableness under the common law of search and seizure “may depend in part on whether law enforcement officers announced their presence and authority pri- or to entering.” Id. at 931, 115 S.Ct. at 1917 (emphasis added). While the Court concluded that not “every entry must be preceded by an announcement,” the jurisprudence offered in support of the conclusion detailed the same factors used to determine if the “knock and announce” rule was applicable, i.e., the threat of violence, the potential for destruction of evidence, or the exigency of a chase. Id. at 934-36, 115 S.Ct. at 1918-19. Thus, it is clear from Wilson that unless the requisite special circumstances exist, the police must announce their presence and authority in some manner before they enter a residence.
In the instant case, the police officers announced their presence as they were opening the door and entering, not prior to doing so. Therefore, the question of whether they also had to physically knock need not be reached in this case because the officers neither knocked nor announced their presence prior to entering. Accordingly, the trial court did not err in finding that the police failed to comply with the “knock and announce” rule in executing this warrant.
For these reasons, the judgment of the trial court granting Mr. Stewart’s motion to suppress is affirmed. The matter is remanded for further proceedings not inconsistent with this opinion.
WRIT APPLICATION GRANTED; JUDGMENT AFFIRMED; CASE REMANDED.

. Although both parties presented oral arguments, these were not transcribed for indusion with this writ application.

. It is noted that while the docket master for this case suggests that the defendant was almost 59 at the time of his arrest, "Skee” was described as 35-40 years old.