# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-517

**STATE OF LOUISIANA**

**VERSUS**

**ESHOM V. ASHWORTH**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2014-576
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**DAVID KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David Kent Savoie, Judges.

**AFFIRMED.**

**James R. Lestage**
**District Attorney**
**36th Judicial District Court**
**Richard A. Morton**
**First Assistant District Attorney**
**124 South Stewart Street**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P. O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Eshom V. Ashworth**

**SAVOIE, Judge.**

Defendant, Eshom V. Ashworth, was charged with possession of marijuana with the intent to distribute, a violation of La.R.S. 40:966(a), on August 28, 2014. On February 10, 2015, Defendant filed a motion to suppress evidence seized during a search of his residence. The motion was heard on February 18, 2015, and it was denied by the trial court. Defendant then pled guilty to possession of marijuana, third offense, a violation of La.R.S. 40:966(E)(3), on February 23, 2015. The trial court imposed the agreed-upon sentence of ten years at hard labor with no time suspended plus a $1,000.00 fine and costs. As part of his plea agreement, Defendant reserved his right to appeal the trial court's denial of his motion to suppress pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976).

## FACTS

On June 19, 2014, Detective Julian Williams of the Beauregard Parish Sheriff's Office filed an application for a warrant to search Defendant's residence and vehicle, a 2003 green Dodge Durango. The application listed Defendant's residence as 328 North Frusha Drive in DeRidder, Louisiana, and it described the home as a "tan wood frame house with red trim."

According to the application, Detective Williams had learned from a reliable confidential informant (CI) that marijuana could be purchased from Defendant, "who lives in a wood frame house on Frusha Street." The application described three different marijuana purchases made by the CI from Defendant, all at 328 North Frusha Drive.

The district court judge issued a search warrant in response to the application. The warrant listed the premises to be searched as 1014 Davis Street in DeRidder rather than 328 North Frusha Drive. It described the residence as a

"wood frame house, tan in color, red trim." It also authorized the execution of the warrant to be made "without knocking or announcing your presence."

The warrant was executed on June 20, 2014, at 328 North Frusha Drive instead of the Davis Street address. The warrant's return indicates that deputies seized four plastic bags containing a green plant material later identified by drug analysis as containing tetrahydrocannabinol (THC) and other items during the search.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

Defendant contends that the trial court erred in denying his motion to suppress because the search warrant was constitutionally invalid on two grounds. First, he argues the warrant failed to adequately describe the location of the place to be searched. Second, he believes the no-knock warrant was not justified by a showing of particularized suspicion. Defendant seeks the suppression of all evidence seized in the search.

*Incorrect Address*

At the hearing of the motion to suppress, Deputy Julian Williams testified he had received information that Defendant was selling marijuana from an informant with whom he was familiar and had "[d]one business in the past." The informant said he had purchased marijuana from Defendant at a home on Frusha Street, but he did not specify a date or time frame for the purchase. Deputy Williams did not include that information in the warrant application.

2

After Deputy Williams learned the initial information, he set up three additional purchases from Defendant. Although Deputy Williams did not observe the transactions, two other detectives did. Deputy Williams applied for a search warrant for the Frusha Street address based on these transactions. The notary who signed the application, Deputy Sandra LeJeune of the Beauregard Parish Sheriff's Office narcotics task force, typed the actual warrant.

Officer LeJeune verified she used "a preprinted form, and the address is a typo and showed 1014 Davis instead of 328 North Frusha." The mistake was discovered on either June 20 or June 25, 2014, after the execution of the warrant. Deputy LeJeune contacted the office of the District Attorney about the mistake and was advised to write a supplemental report about the error.

On June 20, 2014, the Beauregard/DeRidder narcotics task force issued the original report about the search and seizure. The report stated that the trial judge signed a search warrant for Defendant's residence at 328 North Frusha Drive. On June 25, 2014, the supplemental report explained that the search warrant "incorrectly stated the address to be 1014 Davis Street in DeRidder." It referenced photographs of the houses at 328 North Frusha Drive and 1014 Davis Street and the "physical differences in both residences" shown in the photographs. Only black and white photocopies of the photographs are in the record on appeal. Both homes appear to have the address numbers clearly displayed.

The supplemental report also explained that the houses are approximately 2.69 miles apart and are across town from each other. The report further stated that the photographs showed a 2003 green Dodge Durango parked under the carport at 328 North Frusha Drive. The report concludes, "Officers did serve the Search Warrant on the correct residence of 328 North Frusha Drive, which is stated on the

3

Search Warrant Application, and the Search Warrant was served in good faith, with Officers finding illegal narcotics at the residence."

Deputy LeJeune testified that the Frusha Drive house was "a wood-frame house with red trim, maybe brownish-red trim," and the Davis Street house was "a wood-frame house, dark brown in color." She believed Defendant had no connection to the Davis Street residence. The Frusha Street residence was registered to Gabrielle Bowers, Defendant's fiancée. Ms. Bowers had owned the home since around October 2009.

Deputy Williams believed that he "had raided" the house at 1014 Davis Street in the past. He referred to that address on the search warrant as a "typo." The correct address was "328 Frusha." At all times during his investigation of Defendant, he dealt with the Frusha Drive address.

> A search warrant must particularly describe the place to be searched. U.S.Const. Amend. 4; La.Const. art. 1, s 5 (1974); La.Code Crim.P. art. 162. The description contained in the search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with reasonable probability that they will not search the wrong premises. *Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); *State v. Segers*, 355 So.2d 238 (La.1978); *State v. Cobbs*, 350 So.2d 168 (La.1977).

> This court has held that a minor error in a portion of the description of the premises to be searched does not invalidate the search. *State v. Segers, supra* ; *State v. Petta*, 354 So.2d 563 (La.1978); *State v. Cobbs, supra* ; *State v. Alexander*, 337 So.2d 1111 (La.1976); *State v. Chaffin*, 324 So.2d 369 (La.1975), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832.

*State v. Korman*, 379 So.2d 1061, 1063 (La.1980).

*Korman* involved a search warrant with the stated address of 6656 Harry Drive, Apartment 119. The correct address was 6636 Harry Drive, Apartment 119. The officer who obtained the warrant testified that the only sign he saw at the

apartment complex bore the number 6656, and it was located near the actual apartment. The supreme court determined "there was little possibility that an apartment not intended to be searched could have been searched through mistake – as indeed it was not." *Id.* Thus, the court concluded "the description in the search warrant sufficiently described the place to be searched." *Id.*

Likewise, the fourth circuit held a search warrant listing the subject address as 70001 Bundy Road, Apartment E-15, sufficiently described the correct address of 7001 Bundy Road, Apartment E-15. *State v. Johnson*, 534 So.2d 1322 (La.App. 4 Cir. 1988), *writ denied sub nom. State v. Willis*, 540 So.2d 326 (La.1989). A police officer conducted surveillance of the apartment in response to an informant's tip and saw a man enter, stay a few minutes, and leave. When the man saw the officer, he became apprehensive and ran. The officer then obtained a search warrant. Prior to executing it, the officer verified the defendant's residence with the apartment manager.

In contrast, the supreme court granted a motion to suppress because of an incorrect address on the search warrant in *State v. Manzella*, 392 So.2d 403 (La.1980). There, the address on the search warrant was 6176 Pontchartrain Boulevard. A woman at that address told police the man they sought was her brother, the defendant, and he lived next door at 6178 Pontchartrain Boulevard.

The supreme court distinguished *Korman*, 379 So.2d 1061, because only one apartment in the entire complex was numbered 119, which was the apartment number noted on the search warrant. Little possibility existed for the search of the wrong premises. However, in *Manzella*, 392 So.2d 403, the warrant contained an actual address, and it was incorrect. The court stated:

5

The apartment which was searched by the police was not "particularly described" in the warrant. In fact, another apartment, not defendant's, was so particularly described. The description employed would not have prevented the search of the wrong premises; rather, the description would have facilitated search of the wrong premises. That 6176 Pontchartrain was not searched was due to the lucky happenstance that defendant's sister answered the bell at 6176 Pontchartrain Boulevard and informed police that defendant lived at 6178 rather than 6176.

*Id.* at 406.

The trial judge here explained his reasoning:

Now, the second issue is whether, because of the address being typed wrong on the search warrant, whether that invalidates the search. Well, State versus Korman, K-O-R-M-A-N, 379 Southern Second 1061, Louisiana Supreme Court 1980—that you have cited in your own memo, [Defendant's counsel]—provides that a discrepancy between the location described in the warrant and the location searched will generally not invalidate the search warrant. Further, in State versus Johnson, 534 Southern Second 1322, Louisiana Fourth Circuit case, 1988, found that an error in the search warrant as to the address was upheld as a valid search, finding that there was very little, if any, possibility that the wrong premises would be searched. The police officer in that case obtained and executed the warrant after personally observing the premises, setting up surveillance, and verifying that the defendant resided there. And I think that's exactly what you have here.

I think you have a typographical clerical error that was committed [and] that [neither] the officer who submitted it to me, nor I, caught in reviewing the warrant. And that's unfortunate.

I will tell you that there have been other occasions where I have caught such a discrepancy in reviewing the application and the warrant. I didn't catch this one; and, apparently, neither did Officer Williams or Officer LeJeune, who normally types these up for Officer Williams.

But the fact is, the testimony that's been brought out today is the Davis Street address is not connected with [Defendant] in any way, shape, or form. That's simply something that was left over in the word processor from some other location.

Now, perhaps if you had a different scenario where the Davis Street address was searched by mistake because an officer who didn't know where they were really going or focusing on had gone to that address and something illegal was found, then the owner of that Davis

Street address may have a very valid constitutional issue to raise about the validity of searching that address. And that's what the cases that I looked at that invalidated search warrants based upon errors in the description of the residence come down to. But there was never any anticipation of searching any residence other than 328 North Frusha Drive by officers in this matter; and, in fact, that's the residence that was searched. It's the residence that was listed and described in the application, and it's just that the street address was – a clerical error was committed.

. . . .

Again, there was no intention by law enforcement to deceive the court or lie to the court or intentionally provide false information to the court by the wrong address.

The affidavit seeking the warrant in the present case identified the specific, particular location, including the correct address. Detective Williams completed the affidavit based on three separate marijuana purchases made at 328 North Frusha Drive, a tan, wood frame house with red trim. He met with the SWAT team and told them "what's going on . . . ." The SWAT team was already present at 328 North Frusha Drive when Detective Williams arrived. Clearly, the SWAT team was given the address of 328 North Frusha Drive as the location to execute the warrant; had the team relied on the warrant, it would have executed it at 1014 Davis Street.

Enough measures were taken to ensure the search occurred at the correct location and the wrong address on the warrant was a typographical error. The search at the correct address was not "lucky happenstance"; it was the result of a planned operation based on prior illegal activity involving a known drug dealer. Although the search warrant contained the wrong address, the officers involved in executing it at all times knew the intended location through close communication and coordination. DeRidder is a small town with a small police department. Unlike the New Orleans situation in *Manzella*, 392 So.2d at 406, where officers

span multiple departments and areas of a large city, a search of the wrong premises is far less likely to occur.

Based on the foregoing, we find there are sufficient facts to consider the wrong address on the warrant to be a typographical error. We find the motion to suppress was properly denied based on this contention.

*No-Knock Search*

On June 20, 2014, the SWAT team executed the search warrant prior to Detective Williams' arrival. According to Detective Williams, the fact that Defendant was dangerous and a known drug dealer presented sufficient risk to officer safety to justify the "no-knock" search, in addition to the possibility evidence could be destroyed. However, Detective Williams asked for a "no-knock" search every time he applied for a warrant.

Deputy LeJeune testified that most of the department's search warrants are executed without first knocking or being announced. Although the trial court does not always authorize a no-knock entry, "probably the majority of them are no-knock search warrants."

Ms. Bowers testified that she had just come home from work when police arrived on June 20, 2014. She and several others were "sitting around having a few beers." Defendant had gone to bed when she "heard a boom," and police entered her home by force. She "thought it was a house invasion." Had police called out or indicated they had a search warrant, she would have opened the door; "it wasn't uncommon for [Defendant's] probation officer to come" to the house. She was never shown a search warrant, but she was told about the warrant after everyone, except for her and her son, was handcuffed. When she returned home after going to the police station that night, Ms. Bowers found the search warrant on

8

her pool table. Ms. Bowers was not selling marijuana from the house, and she was not aware of anyone else doing that.

Deputy Hubert Sharp testified at the hearing as the senior chief of special operations for the Beauregard Parish Sheriff's Office, also known as the SWAT team. The narcotics task force contacted Deputy Sharp on June 20, 2014, and advised him of the search warrant at issue. Deputy Sharp was familiar with Defendant from his years of working with the task force and knew him as "a multiple offender in distribution of narcotics."

Deputy Sharp customarily assesses a situation by performing a threat assessment using a point system. If the situation rates twenty-five points or more, the callout of his unit is mandatory. Although Deputy Sharp did not know the number of points this situation scored, he knew "it was high" and mandatory for his team.

Defendant received several points because of his criminal history and the fact this was a drug case. Most of Deputy Sharp's cases involve more than 25 points because "if there's drugs, there's violence. If there's drugs, there's guns." Deputy Sharp was also aware that a search warrant had been issued a year earlier for 328 North Frusha Drive based on probable cause that an occupant of the residence was involved in an armed robbery. The home's possible involvement with an armed robbery "was another factor in [Deputy Sharp's] point system."

Officer safety, safety for the people in the house, and potential loss of evidence are factors Deputy Sharp generally considers in his threat assessment. This particular house "was kind of a different built structure" with an old carport that had been made into a game room. Deputy Sharp sent teams into both sides of the house because the game room, or "smoke room," was on one side of the house,

9

and the bathroom was on the other. One team's goal was to breach the north side door and secure the bathroom to prevent the flushing of evidence down the toilet. The other team entered the house from the carport side.

Deputy Sharp used a perception-overload entry technique as used by the Israeli Mossad. His team threw a flash-bang, an extremely loud device that puts off a bright light, on the exterior carport side of the residence. The flash-bang looks like a hand grenade and is designed to disorient a building's occupants so they do not know what is happening. It makes a noise "way louder than a gunshot." Deputy Sharp's team used a ram, "a big, heavy tool . . . to take out the locking mechanism inside the door frame." The other team used a ram on the other side of the house.

Everyone on Deputy Sharp's team "was saying 'search warrant.'" If the occupants did not hear, "it was because the music was blaring so loud[ly.]" Officers could hear the music before they entered the home; Deputy Sharp testified "[i]t was good" for them because they knew they could get to the door before the home's occupants knew they were there. Deputy Sharp executed the warrant without knocking or announcing their presence according to the warrant. As soon as the door was breached, officers announced "sheriff's office, search warrant." By design, Ms. Bowers did not have time to open the door after she heard the battering ram and flash-bang. Deputy LeJeune told Deputy Sharp she was leaving the search warrant at the house, and he saw her place it on the pool table.

Law enforcement is not required to announce their "authority and purpose when to do so would imperil the arrest." La.Code Crim.P. art. 224.[1] When police

---

[1]Louisiana Code of Criminal Procedure Articles authorizing means of force for arrest also apply to search warrants. La.Code Crim.P. art. 164.

have a reasonable suspicion of the threat of physical violence or of the likelihood evidence will be destroyed, advance notice is not necessary. *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914 (1995); *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416 (1997). The determination of whether the circumstances "justify the extent of the noncompliance with the knock-and-announce requirement is determined by an analysis of the facts of each case." *State v. Miskell*, 98-2146, p. 6 (La. 10/19/99), 748 So.2d 409, 413 (citing *Richards*, 117 S.Ct. 1416).

The determination of reasonable suspicion or probable cause requires analysis of the events leading up to the search. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657 (1996). The trial court should examine those facts and determine whether the knock-and-announce rule should be followed. *Id.* "[A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers[,]" giving deference to the community's "distinctive features and events" and "the lens of [a police officer's] experience and expertise." *Id.* at 699.

In *Miskell*, 748 So.2d 409, the trial court denied the defendant's motion to suppress drug evidence seized during a no-knock search. The warrant was based on a confidential informant's drug purchase from the defendant and his "detailed knowledge of [the] defendant's activities." *Id.* at 414. The investigating detective had personal knowledge and observation of the illegal activity at the defendant's residence and of circumstances suggesting the destruction of evidence could occur. The fourth circuit reversed the trial court and granted the defendant's motion to suppress. However, the supreme court vacated that order and reinstated the trial court's denial because the police articulated a reasonable suspicion that a knock-

11

and-announce entry would allow the defendant time to discard the drug evidence and expose those executing the warrant, and those inside the residence, to a serious threat of harm. The combination of those facts "militate[d] in favor of finding that defendant's privacy interests must yield to the reasonableness of a no-knock entry under the facts presented." *Id.* at 415.

Here, Detective Williams requested the no-knock warrant based on his knowledge of the prior search warrant, the prior drug purchases, and Defendant's history as being a known drug dealer and a dangerous man. While he articulated the reasons for requesting a no-knock warrant and admitted he always did so in cases involving drug dealers, the decision to grant or deny the request was for the magistrate who signed the warrant, in this case, the trial judge. He considered Defendant's criminal history. He was the same magistrate who had signed a search warrant in the previous year because an occupant of the residence was suspected in involvement in an armed robbery. Testimony at the hearing of the motion to suppress confirmed to the trial judge the officers' reasonable belief that a no-knock entry was appropriate in order to maintain safety and preclude the destruction of evidence.

Defendant has failed to show any clear error in the trial court's finding concerning the no-knock search. We find this assignment of error lacks merit.

*Suppression of seized evidence*

Defendant suggests the evidence seized during the search should be suppressed because of the lack of reasonable suspicion for the no-knock warrant and the blanket rule of the sheriff's office to use no-knock entries in all drug cases. For the reasons discussed above, reasonable suspicion for the no-knock warrant existed, and this issue is moot.

**DECREE**

Although the search warrant contained an incorrect address, the affidavit on which the warrant was based contained the intended search location. Law enforcement's measures to insure the search of the correct location were the result of a planned operation and were sufficient to consider the wrong address on the warrant to be a typographical error under these facts. *State v. Korman*, 379 So.2d 1061 (La.1980).

Further, law enforcement had reasonable suspicion of the threat of physical violence or of the likelihood evidence would be destroyed. Thus, the issuing magistrate was justified in granting a no-knock search of the premises. The trial court did not err in denying Defendant's motion to suppress. *State v. Miskell*, 98-2146 (La. 10/19/99), 748 So.2d 409.

Defendant's conviction and sentence should be affirmed.

**AFFIRMED.**